**In the Interest of Wilma COOTS, Deceased.**

**Ilene SMITH, Personal Representative, et al., Respondents,**

v.

**Wesley BURTON, Appellant.**

**No. WD 47340.**

Missouri Court of Appeals, Western District.

June 7, 1994.

Terry M. Evans, Trenton, for appellant.

Mallory V. Mayse, Columbia, for respondents.

Before BERREY, P.J., and KENNEDY and ELLIS, JJ.

KENNEDY, Judge.

Defendant Wesley Burton appeals from the grant of a new trial in a wrongful death case in which he is alleged to have negligently caused or contributed to cause the death of Garland Coots. The plaintiffs are Mr. Coots's surviving spouse and children. Mr. Coots, on July 27, 1987, was driving his farm tractor along Highway 136 in Harrison County, when it was struck from the rear by a passenger van operated by Mr. Burton. The tractor was turned over and Mr. Coots was dead after the accident. Mr. Burton contended at trial that Mr. Coots was dead from a heart attack before the collision, and that his death was therefore not caused or contributed to by the collision.

The facts are as follows:

Defendant Burton was driving his passenger van eastward on two-lane Highway 136, when he came upon a disabled tractor-trailer rig parked on the south shoulder of the highway. The rig had been there three or four days; Burton had seen it before as he had driven along this route, and had stopped to inspect it. Burton, as he approached and passed the tractor-trailer rig, and thinking someone might be working on or around it, steered his van toward the middle of the road. As he passed the rig, he saw a farm tractor directly ahead—operated, as it turned out, by Garland Coots—going east on the south shoulder of the road. It had been hidden from Burton's view by the tractor-trailer rig. Burton had seen the tractor a short distance west, travelling east in the eastbound traffic lane of the highway. As Burton passed the tractor-trailer rig and saw the Coots tractor, the tractor swerved sharply toward the north, on to the highway. Bur-

ton applied his brakes and at the same time steered to the left, but he struck the rear of the Coots tractor. At the time of the impact, the Coots tractor was almost wholly on the highway and was going east, having completed the turn on to the highway. The collision turned the farm tractor over on its top, with Coots under it. "The tractor was upside down and he was underneath it right at the steering wheel," Burton testified. He was dead, his chest crushed.

The official death certificate showed the cause of death to have been "Massive Chest Injuries." There was no autopsy.

The court gave the following verdict-directing instruction offered by plaintiff:

### Instruction Number 4

In your verdict you must assess a percentage of fault to defendant if you believe:

First, plaintiffs were the surviving children and spouse of Garland W. Coots, and

Second, the van operated by defendant came into collision with the rear of the tractor operated by Garland W. Coots, and

Third, defendant was thereby negligent, and

Fourth, such negligence directly caused or directly contributed to cause the death of Garland W. Coots.

■ The court also gave the following instruction offered by defendant, which the court later, upon plaintiffs' motion for a new trial, determined had been erroneously given:

### Instruction Number 5

Your verdict must be for defendant if you believe that Garland W. Coots was dead immediately prior to the accident.

The jury returned verdicts assessing zero fault to each party. The plaintiffs filed a motion for a new trial, alleging—among other allegations of trial court error—that the giving of the last-quoted instruction was error. The trial court granted the new trial on that ground.

Plaintiffs argue that defendant's affirmative converse instruction, submitting decedent's death before the crash, was erroneous on two grounds—first, that it was not sup-

ported by evidence, and second, that it submitted an issue which was neither omitted nor assumed as true in plaintiffs' verdict director. *See Hiers v. Lemley*, 834 S.W.2d 729, 736 (Mo. banc 1992). We consider the first of the two grounds, and have concluded it is dispositive.

■ We hold, first, this was an affirmative converse instruction. Our Supreme Court in *Hiers* distinguished the true converse instruction from the affirmative converse instruction in the following terms:

There are two fundamental types of authorized converse instructions: the true converse and the affirmative converse. The true converse begins, "Your verdict must be for the defendant unless you believe ..." and the remainder of the instruction is to be taken from the verdict director. The form book for the language of the converse instruction, other than the introductory phrase, is the verdict director itself. MAI 33.01. In contrast, an affirmative converse presents a hypothetical ultimate issue which, if true, would defeat plaintiff's claim. The affirmative converse instruction begins, "Your verdict must be for the defendant if you believe ..." and it requires independent evidence for support. MAI 33.01.

*Id.* at 734.

■ The proponent of the affirmative converse instruction assumes the risk of nonpersuasion on the issue thereby submitted. *Hiers*, 834 S.W.2d at 735–36; *Tierney v. Berg*, 679 S.W.2d 919, 921 (Mo.App.1984).

Defendant Burton says the trial court rejected the new trial motion ground that the affirmative converse instruction was not supported by the evidence, but granted the motion on a different ground, to wit: that the giving of Instruction Number 5, an affirmative converse, violated the law by submitting in the affirmative the same issue in substantially the same language as was already submitted in paragraph 4 of Instruction Number 4. For this argument, defendant Burton cites the oral comments of the trial judge at the time of ruling on the motion for a new trial, wherein the court expressed the opinion that there was sufficient evidence that dece-

dent was dead before the impact to support the hypothesis of the affirmative converse instruction. The court wrote in its docket book, however, that the motion for new trial was sustained on paragraphs 6 and 7. Paragraph 6 of the motion for a new trial was that the evidence did not support the defendant's affirmative converse instruction. Defendant seems to say we may not review the propriety of the trial court's grant of a new trial on a ground which the trial court rejected.

Whether the court did or did not sustain the motion for a new trial on the alleged insufficiency of the evidence to sustain defendant's affirmative converse instruction, respondent on appeal may argue that ground in support of the trial court's grant of a new trial. In an appeal from the grant of a new trial, the respondent, in support of the order granting the new trial, may argue any ground stated in the motion for a new trial, whether the new trial was granted on that ground or not. *Boswell v. Steel Haulers, Inc.*, 670 S.W.2d 906, 911 (Mo.App.1984); *Zink v. Hile*, 594 S.W.2d 344, 346 (Mo.App. 1980). Was there independent evidence to support the hypothesis of the affirmative converse instruction, *i.e.*, that Garland Coots was already dead at the time of the collision? We hold there was not.

Defendant cites Coots's movements, or absence of movement, during the instant before the collision, as evidence he was already dead at the time of the collision. Burton's testimony, as nearly as possible in his own words, is gleaned from his direct and cross examination: "The operator appeared to be an elderly man. I could see that he had white hair or gray hair. Appeared to be slumped. He didn't look back to see if there was anything behind him. He just looked straight ahead. I didn't see him move at all. By "slumped," I mean he was more or less bent over. I don't know that I could say he was bent over. He was slouched in the seat, what I would call slouched—looking down towards the steering wheel area of the tractor. It might not have been right at the steering wheel but he was looking down. His head was tilted down. I didn't see his arms move one way or the other. I never saw his face. He never turned in my direction." In his deposition testimony, read by plaintiffs, Burton said: "[Coots] was looking east, straight ahead."

The tractor seat on which Coots was sitting was without arms, or anything else, except a back, to hold its occupant upright. It was not enclosed in a cab.

■ The foregoing, standing alone, is no evidence at all that Coots was dead before the impact. It suggests only the possibility, and a remote possibility, at that, of defendant's sudden death in the instant before the collision. There could be a variety of explanations for decedent's posture and his apparent inattention during the brief moment before the collision, with his sudden death being the least likely. Life is conclusively presumed to continue until the contrary is shown by sufficient proof. *Magers v. Western and Southern Life Ins. Co.*, 335 S.W.2d 355, 357 (Mo.App.1960); *Basman v. Frank*, 250 S.W.2d 989, 994 (Mo.1952).

Defendant put in a good deal of evidence that Coots suffered from chronic heart disease, and was taking medication for it. Five years earlier, he had been hospitalized for five days for this condition. He went about the work of operating his farm, however, with no apparent disability. His heart disease was of a kind that could have caused sudden death, but that he did in fact have a sudden heart attack in the instant before the collision, there was no medical evidence at all. To establish that death was caused, or probably caused, by a heart attack would have required expert medical evidence. *Bailey v. Kershner*, 444 S.W.2d 10, 15 (Mo.App. 1969); *North Kansas City Memorial Hosp. v. Wiley*, 385 S.W.2d 218 (Mo.App.1964).

There being no evidence to support the giving of defendant's affirmative converse instruction submitting to the jury the death of the decedent prior to the impact, it was error to give the same.

■ Defendant says, however, that plaintiffs did not object to the giving of the affirmative converse instruction at trial, before it was given, and therefore any error in giving the instruction was invited by the plaintiffs, or waived, or was non-prejudicial. He cites the well-known cases of *Fowler v. Park*, 673

S.W.2d 749 (Mo. banc 1984); *Hudson v. Carr,* 668 S.W.2d 68 (Mo. banc 1984); and *Goff v. St. Luke's Hosp. of Kansas City,* 753 S.W.2d 557, 565 (Mo. banc 1988). In each of those cases, the trial court had *denied* a new trial, and defendant was attacking the instruction on appeal. We would examine defendant's non-prejudice argument more closely if the trial court had, as in those cases, denied the motion for a new trial. "[T]he judgment of the trial court on matters of prejudicial error is entitled to great weight." *Goff,* 753 S.W.2d at 564. The court's finding of prejudice is not merely implicit in its grant of a new trial; the court said in ruling on the motion for a new trial: "I don't think there is any question but what this jury found that Mr. Coots was dead before this accident."

Plaintiffs were not required, in order to preserve for appeal their objections to defendant's affirmative converse instruction, to make their objections at trial. Rule 70.03.[1] The complaining party's failure to object to an instruction at trial may be taken into account, however, in determining prejudice, or may be held to be a waiver of the objection. In determining these issues, *i.e.,* prejudice and waiver, the Supreme Court in *Fowler* considered that the proponent of the erroneous instruction did not exploit it in argument. *Fowler,* 673 S.W.2d at 756. Here, the defendant in argument did specifically draw the jury's attention to the instruction. Also in *Fowler,* unlike the present case, the complaining party went beyond the mere withholding of objections at trial, but was deemed to have affirmatively condoned the giving of the erroneous instruction. *Id.* In *Goff,* the instruction in the error was of a technical and non-substantive character. *Goff,* 753 S.W.2d at 564–65. In the present case, the error was not technical or non-substantive; it was not supported by the evidence, and should not have been given at all. See generally, *Hudson v. Carr,* 668 S.W.2d 68, 71 (Mo. banc 1984).

■ Defendant says the error in giving the affirmative converse instruction is harmless since the jury by its verdict found the defendant free of fault. Defendant cites cases which hold that trial error is harmless if the error bears only upon the plaintiff's fault, if the jury finds the defendant free of fault. The theory of these decisions is that the jury, in determining the defendant was free of fault, never reached the issue of plaintiff's comparative fault. *Koch v. Bangert Bros. Road Builders,* 697 S.W.2d 315 (Mo. App.1985). Those cases do not apply here. In this case, the error—in submitting the spurious issue of the death of decedent before the collision—could have kept the jury from reaching the issue of fault, decedent's or defendant's, at all.

The trial court correctly granted the motion for a new trial, and the order is affirmed.

All concur.

---

1. New Rule 70.03, effective January 1, 1994, requires specific objections to instructions before the jury retires to consider its verdict.